UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DOUGLAS EUGENE HUEY,

                Petitioner,

v.

SHANE JACKSON,

                Respondent.

_____/

Case No. 1:19-cv-934

Honorable Paul L. Maloney

## <u>OPINION</u>

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

<u>**Discussion**</u>

## I.      Factual allegations

Petitioner Douglas Eugene Huey is incarcerated with the Michigan Department of
Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights,
Muskegon County, Michigan.

The Michigan Court of Appeals opinion provided the following summary of the
pertinent facts from Petitioner's case:

> This case arises out of a traffic stop of defendant's pickup truck and an attendant
> consensual search of the vehicle.   Defendant had driven Meghan Nelson[1] to
> Walmart and waited outside while she bought a box of cold medicine containing
> pseudoephedrine, a chemical ingredient used to manufacture methamphetamine.
> Defendant then drove Nelson to Home Depot.  After entering the store with Nelson,
> defendant picked out a large bottle of drain cleaner that also contained chemicals
> used to manufacture methamphetamine, and handed it to Nelson, who paid for it.
> The purchases of the two items occurred within a time span of 12 minutes.
>
> After they left Home Depot, Michigan State Police Trooper Justin Reed pulled
> defendant's truck over for a faulty muffler.  Sergeant David Crilly of the Coldwater
> Police Department arrived to assist Reed.   As he was pulling the vehicle over,
> defendant told Nelson to hide the drain cleaner in her purse, and she did so.
> Defendant consented to a search of his truck, whereupon Reed discovered the
> medicine containing pseudoephedrine sitting on or near Nelson's purse at a location
> inside the truck that had been accessible to both occupants.  Crilly discovered the
> drain cleaner inside of Nelson's open purse.  Defendant admitted to Reed that he
> had driven Nelson to Walmart and Home Depot.  He also admitted that he knew
> that pseudoephedrine and drain cleaner were chemicals used to make
> methamphetamine and that he knew how to make methamphetamine.  Defendant
> further admitted that he had been in trouble with methamphetamine in the past.
> However, defendant denied that the medicine and the drain cleaner were his or that
> he was going to use them to make methamphetamine.
>
> Nelson initially told police that the medicine was for a cold and that the drain
> cleaner was for a clogged drain at defendant's house.  She then changed her story
> and said that she knew that the items were used to make methamphetamine and that
> she had bought them for defendant with the intent of trading them for $50 worth of
> methamphetamine.  She then reversed herself yet again and told police that she was
> not buying the items for anyone.  At trial, Nelson testified that she had purchased
> the items to trade to defendant for methamphetamine, and that she frequently
> engaged in similar transactions with defendant (in which she would buy ingredients
> for  making  methamphetamine  and  then  trade  them  to  defendant  for

methamphetamine once he had manufactured it). Nelson admitted at trial that she was testifying in accordance with a plea agreement that she had reached with the prosecution.

[1] Nelson was also charged in connection with this incident, but entered into a plea agreement with the prosecution in return for her testimony at defendant's trial.

*People v. Huey*, No. 332955, at 1-2 (Mich. Ct. App. Aug 15, 2017), http://publicdocs.courts.mi.gov/opinions/final/coa/20170815_c332955_46_332955.opn.pdf.

Following a jury trial in the Branch County Circuit Court, Petitioner was convicted of Operating or Maintaining a Lab Involving Methamphetamine under Mich. Comp. Laws § 333.7401c(2)(f), and fourth habitual offender, under Mich. Comp. Laws § 769.12. On April 18, 2016, the court sentenced Petitioner to a prison term of 15 to 40 years.

On November 4, 2019, Petitioner filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner signed his application on November 4, 2019. (Pet., ECF No. 1, PageID.25.) The petition was received by the Court on November 6, 2019. For purposes of this opinion, the Court has given Petitioner the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

The petition and the accompanying brief raise twenty grounds for relief, as follows:

I.  [PETITIONER]'S CONVICTION FOR POSSESSING A CHEMICAL TO MANUFACTURE METHAMPHETAMINE MUST BE VACATED BECAUSE IT RESTS ON CONSTITUTIONALLY INSUFFICIENT EVIDENCE OF CRITICAL ELEMENTS OF THE CHARGE, WHERE THERE WAS NO PROOF [PETITIONER] OWNED OR CONTROLLED ANY CHEMICAL OR LABORATORY EQUIPMENT, AND NO PROOF [PETITIONER] HAD KNOWLEDGE THAT ITEMS IN THE VEHICLE WERE OR WOULD BE USED TO MANUFACTURE METHAMPHETAMINE.

II.  THE TRIAL COURT ERRED WHEN PROVIDING A JURY INSTRUCTION THAT DID NOT CONTAIN EACH ELEMENT OF THE OFFENSE.

III.  [PETITIONER]'S CONVICTION MUST BE VACATED OR REVERSED BACK TO TRIAL COURT FOR A NEW TRIAL BECAUSE [PETITIONER] WAS CHARGED WITH OPERATING/MAINTAINING A LABORATORY INVOLVING METHAMPHETAMINE MCL 333.7401c(2)(f) ALSO DESCRIBED AS OWNING OR POSSESSING CHEMICALS TO MANUFACTURE METHAMPHETAMINE MCL 333.7401c(1)(b) WHICH IS A 20-YEAR FELONY AND WHICH [PETITIONER] WAS SENTENCED UNDER RECEIVING 15-40 YEARS IN PRISON WHEN BY M.CRIM JI 12.1b, IT CLEARLY STATES KNOWINGLY OWNING OR POSSESSING THE DESCRIBED CHEMICALS IS A 10-YEAR OFFENSE NOT A 20-YEAR OFFENSE.

IV.  A NEW TRIAL IS REQUIRED IN [PETITIONER]'S CASE BECAUSE M.CRIM JI 12.1b THAT WAS INTRODUCED TO THE JURY WAS INCOMPLETE, OMITTING KEY INFORMATION THAT CAUSED AN INJUSTICE TO HIS CASE AS A RESULT OF PIECEMEAL JURY INSTRUCTIONS BY THE PROSECUTION CUSTOMIZED TO FIT THE DIRECTION OF THE PROSECUTION, MAKING THIS TRIAL UNFAIR WHEN THE ACTUAL JURY INSTRUCTIONS M.CRIM JI 12.1b STATES THAT OWNING OR POSSESSING THE DESCRIBED CHEMICALS IS A 10-YEAR OFFENSE, NOT A 20-YEAR OFFENSE WHICH [PETITIONER] WAS SENTENCED UNDER.

V.  [PETITIONER]'S CONVICTION MUST BE VACATED OR REVERSED FOR A NEW TRIAL BECAUSE TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE FOR NOT RESEARCHING THE OFFENSE CHARGED AND HAVING NO STRATEGY TO PROCEED TO TRIAL; RESULTING IN A MANIFEST INJUSTICE.

VI.  [PETITIONER]'S CONVICTION FOR POSSESSING A CHEMICAL TO MANUFACTURE METHAMPHETAMINE MUST BE VACATED BECAUSE IT RESTS ON CONSTITUTIONALLY INSUFFICIENT EVIDENCE OF CRITICAL ELEMENTS OF THE CHARGE WHERE THERE WAS NO PROOF [PETITIONER] OWNED OR CONTROLLED ANY CHEMICAL OR LABORATORY EQUIPMENT, AND NO PROOF [PETITIONER] HAD KNOWLEDGE THAT ITEMS IN THE VEHICLE WERE OR WOULD BE USED TO MANUFACTURE METHAMPHETAMINE.

VII.  [PETITIONER]'S CONVICTION MUST BE VACATED OR REVERSED FOR A NEW TRIAL BECAUSE TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE FOR NOT PROPERLY RESEARCHING THE OFFENSE CHARGED AND HAVING NO

STRATEGY TO PROCEED TO TRIAL; THE RESULT OF WHICH IS A MANIFEST INJUSTICE.

VIII. A NEW TRIAL IS REQUIRED IN [PETITIONER]'S CASE BECAUSE M.CRIM JI 12.1b THAT WAS INTRODUCED TO THE JURY WAS INCOMPLETE, OMITTING KEY INFORMATION THAT CAUSED AN INJUSTICE TO THE CASE AS A RESULT OF PIECEMEAL JURY INSTRUCTIONS BY THE PROSECUTION'S CUSTOMIZATION TO FIT THE DIRECTION OF THE PROSECUTION, MAKING THIS TRIAL UNFAIR WHEN THE ACTUAL JURY INSTRUCTIONS M.CRIM JI 12.1b STATES THAT OWNING OR POSSESSING THE DESCRIBED CHEMICALS IS A 10-YEAR OFFENSE, NOT A 20-YEAR OFFENSE, WHICH [PETITIONER] WAS SENTENCED UNDER.

IX. [PETITIONER]'S CONVICTION MUST BE VACATED OR REVERSED BACK TO THE TRIAL COURT FOR A NEW TRIAL BECAUSE [PETITIONER] WAS CHARGED WITH OPERATING/MAINTAINING A LABORATORY INVOLVING METHAMPHETAMINE MCL 333.7401c(2)(4) ALSO DESCRIBED AS OWNING OR POSSESSING CHEMICALS TO MANUFACTURE METHAMPHETAMINE MCL 333.7401c(1)(B) WHICH IS A 20-YEAR FELONY AND WHICH [PETITIONER] WAS SENTENCED UNDER RECEIVING 15-40 YEARS IN PRISON WHEN BY M.CRIM JI 12.1b IT CLEARLY STATES KNOWINGLY OWNING OR POSSESSING THE DESCRIBED CHEMICALS IS A 10-YEAR OFFENSE AND NOT A 20-YEAR OFFENSE.

X. THE TRIAL COURT ERRED WHEN IT SENTENCED [PETITIONER] TO THE PENALTY PORTION OF MCL 333.7401c(2)(f) WHICH ENHANCED [PETITIONER]'S SENTENCE TO A 20-YEAR MAXIMUM, WHEN [PETITIONER] WAS ONLY FOUND GUILTY OF MCL 333.7401c(1)(b) FOR OWNING/POSSESSING CHEMICALS, WHICH CARRIES ONLY A 10-YEAR MAXIMUM PRISON TERM, WHICH IS CLEARLY DEFINED BY STATUTE AND BINDING MICHIGAN CASE LAW; THE RESULT OF WHICH IS AN INVALID SENTENCE.

XI. TRIAL COUNSEL WAS INEFFECTIVE FOR NOT MAKING A FORMAL OBJECTION TO THE PENALTY PORTION OF MCL 333.7401c(2)(f), SUBSEQUENTLY, APPELLATE COUNSEL WAS LIKEWISE INEFFECTIVE FOR NOT RAISING TRIAL COUNSEL'S SENTENCING ERRORS ON APPEAL.

XII. THE TRIAL COURT IS REQUIRED TO WAIVE "GOOD CAUSE" WHEN THE CONVICTION IS THE RESULT OF A JURISDICTIONAL DEFECT UNDER PEOPLE V CARPENTIER, 446 MICH 19 (1994), AS SUCH, AS DEFENDANT MAY ALWAYS CHALLENGE WHETHER

THE STATE HAD A RIGHT TO BRING A DEFENDANT TO TRIAL. SEE ALSO, PEOPLE V CHAMBERS, 2008 MICH APP LEXIS 410 (FEB. 26, 2008), WHERE THE DEFENDANT WAS NOT REQUIRED TO SHOW CAUSE WHERE HE WAS SENTENCED WITHOUT EVER BEING FOUND GUILTY.

XIII. [PETITIONER] IS ENTITLED TO RESENTENCING BECAUSE HIS MINIMUM TERM WAS AN UNREASONABLE AND DISPROPORTIONATE SENTENCE. THE TRIAL COURT'S DENIAL OF [PETITIONER]'S 6.500 MOTION WAS IMPROPER AND SHOULD BE GRANTED FOR RESENTENCING.

XIV. [PETITIONER] IS ENTITLED TO RESENTENCING BECAUSE HIS MINIMUM TERM WAS AN UNREASONABLE AND DISPROPORTIONATE SENTENCE. THE TRIAL COURT'S DENIAL OF [PETITIONER]'S 6.500 MOTION WAS IMPROPER AND SHOULD BE GRANTED FOR RESENTENCING.

XV. [PETITIONER] WAS DENIED A FAIR TRIAL AS GUARANTEED UNDER BOTH STATE AND FEDERAL CONSTITUTIONS WHEN THE TRIAL COURT FAILED TO GIVE THE JURY THE REQUISITE PRE-TRIAL JURY INSTRUCTIONS AND FAILED TO GIVE COMPLETE JURY INSTRUCTIONS; THE RESULT OF WHICH DEPRIVED DEFENDANT OF HIS LIBERTY IN A MANNER INCONSISTENT WITH DUE PROCESS OF LAW AS ENUMERATED HEREIN.

XVI. PETITIONER WAS DENIED HIS FUNDAMENTAL AND CONSTITUTIONAL RIGHT TO A FAIR TRIAL AS GUARANTEED UNDER BOTH STATE AND FEDERAL CONSTITUTIONS, WHEN THE TRIAL COURT, THE PROSECUTION AND DEFENSE COUNSEL ALLOWED THE JURY TO DECIDE PETITIONER'S FATE BY AND THROUGH A DEFECTIVE VERDICT FORM THAT ERRONEOUSLY COMBINED TWO CHARGES INTO ONE; THE RESULT WAS THAT THE JURY WAS NOT GIVEN THE OPPORTUNITY TO RETURN A NOT GUILTY VERDICT ON THE APPROPRIATE CHARGE.

XVII. PETITIONER WAS DENIED A FAIR TRIAL AS GUARANTEED UNDER BOTH FEDERAL AND STATE CONSTITUTIONS, WHEN TRIAL COUNSEL ABANDONED PETITIONER IN HIS REPRESENTATION AS ENUMERATED HEREIN, THE RESULT OF WHICH IS STRUCTURAL ERROR.

XVIII. PETITIONER WAS DENIED HIS FUNDAMENTAL AND CONSTITUTIONAL RIGHTS TO DUE PROCESS AS GUARANTEED UNDER BOTH FEDERAL AND STATE CONSTITUTIONS, WHEN APPELLATE COUNSEL FAILED TO MASTER THE TRIAL RECORD

AND RAISE THESE MERITORIOUS "DEAD BANG WINNER" ISSUES ON PETITIONER'S APPEAL AS OF RIGHT.

XIX.  RELIEF FROM JUDGMENT SHOULD BE GRANTED WHERE PETITIONER CAN ESTABLISH "GOOD CAUSE" FOR NOT BRINGING HIS ISSUE BEFORE THE COURT PREVIOUSLY, AND "ACTUAL PREJUDICE" DUE TO THE ISSUE OF HIS ONGOING GOVERNMENT INTERFERENCE WHILE INCARCERATED AS OUTLINED HEREIN.

XX.  PETITIONER WAS DENIED HIS FUNDAMENTAL PROTECTIONS TO A FAIR CRIMINAL PROCEEDING BY AND THROUGH THE CUMULATIVE EFFECT OF ERROR THAT TOOK PLACE AT THE HANDS OF THE TRIAL COURT, THE PROSECUTION, DEFENSE COUNSEL AND APPELLATE COUNSEL.

(Pet., ECF No. 1, PageID.4, 5, 6, 8, 10, 11, 12, 13, 14, 16, 18, 19, 20, 22; Pet'r's Br., ECF No. 2, PageID.39, 44, 46, 49, 51, 54.)

## II.  AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the

Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.    Discussion

Petitioner raises twenty grounds for habeas relief between his petition (14 grounds) and his brief (6 grounds). The petition contains redundancies because it enumerates each asserted ground for relief that Petitioner raised at each level on direct appeal and in his petition for relief from judgment and those appeals. Eleven of Petitioner's alleged grounds for relief in his habeas petition attack what he perceives as a discrepancy between the offense under which he was convicted and that under which he was sentenced.

Petitioner was charged under Mich. Comp. Laws § 333.7401c. According to the Michigan Court of Appeals, the jury found Petitioner guilty of engaging in conduct described within Subsection (1)(b): "'Own[ing] or possess[ing] any chemical or any laboratory equipment that he or she knows or has reason to know is to be used for the purpose of manufacturing a controlled substance in violation of section 7401.'" *People v. Huey*, No. 332955, at 2-3 (quoting Mich. Comp. Laws § 333.7401c(1)(b)). The statute creates a default maximum imprisonment of 10 years for violating Section 333.7401c. *See* Mich. Comp. Laws § 333.7401c(2)(a). However, as described in paragraphs (b) through (f) of the subsection, the imprisonment can be increased where the State proves specific aggravating factors to the jury. Relevant to Petitioner's conviction,

a person convicted of violating the section is punishable, "[i]f the violation involves or is intended to involve the manufacture of a substance described in section 7214(c)(ii), by imprisonment for not more than 20 years." Mich. Comp. Laws § 333.7401c(2)(f). The substances described by Section 7214(c)(ii) include "[a]ny substance which contains any quantity of methamphetamine." Mich. Comp. Laws § 333.7214(c)(ii).

Petitioner argues that the jury could not have found him guilty of the aggravating factor—intending to manufacture methamphetamines—because the court's instructions to the jury eliminated a redundancy found in the State's model instructions. Extending this argument, Petitioner constructs a virtual line of dominoes, intending to topple them all by proving a flaw in the court's instructions to the jury. That is, Petitioner concludes that the instructions to the jury allegedly omitting the aggravating factor element therefore conflicted with the verdict form, which did not permit the jury to return a guilty verdict on the base offense without the aggravating factor. Because the jury returned a guilty verdict on the flawed verdict form, the conviction conflicted with the charge brought to the jury. Correspondingly, because the conviction conflicted with the charge, the sentence length was unreasonable and disproportionate. In short, Petitioner's eleven habeas grounds challenging the jury instructions, verdict form, charge-conviction-sentence mismatch, and sentence length all hopelessly rely on his belief that the jury instructions were flawed. Yet, because the jury instructions lacked any identifiable error, Petitioner's related grounds further down the domino line all fall flat.

## A.      Defective Jury Instructions (Grounds II, IV, VIII, XV)

Petitioner contends that the trial court (1) failed to provide instructions to the jury on elements of the charged offenses before evidence was admitted; (2) failed to properly instruct the jury of all elements of the offense for a conviction of possessing chemicals that he intended to use to manufacture methamphetamine under Mich. Comp. Laws § 333.7401c(2)(f); and (3) could

not have found Petitioner guilty of a 20-year offense where the model jury instructions describe the offense as prescribing a maximum penalty of 10 years.

In general, the fact that a jury instruction was allegedly incorrect under state law is not a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991); *Byrd v. Collins*, 209 F.3d 486, 527 (6th Cir. 2000). On habeas review, federal courts ask whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Estelle*, 502 U.S. at 72. It is not enough that the instruction was undesirable, erroneous, or even universally condemned. *Estelle*, 502 U.S. at 72 (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In evaluating the impact of the instruction, courts consider the claim in the context of the instructions and the trial record as a whole. *Cupp*, 414 U.S. at 147. The Supreme Court has defined the subcategory of infractions that constitute constitutional violations very narrowly. *Estelle*, 502 U.S. at 73 (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

Here, Petitioner alleges three separate grounds for error with the trial court's jury instructions. First, in Ground XV, Petitioner asserts that the trial court failed to provide preliminary jury instructions.[1] (Pet'r's Br., ECF No. 2, PageID.39.) Petitioner does not allege that the trial court failed to provide *any* instructions to the jury; after all, the Michigan Court of Appeals discussed the adequacy of the court's instructions to the jury. *See People v. Huey*, No. 332955, at 4-5. Instead, Petitioner argues his conviction violated due process because the court did not

---

[1] Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275-77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Because Petitioner introduces this specific ground for relief in the first instance in his habeas petition, Petitioner has never fairly presented the specific issue to any of the state courts. Although the habeas statute prevents the Court from granting habeas relief on an unexhausted claim, 28 U.S.C. § 2254(b)(1), the Court may still deny relief on such a claim, 28 U.S.C. § 2254(b)(2).

instruct at the proper time.  Petitioner cites Michigan Court Rules, which he contends require courts "provide the jury with pretrial instructions reasonably likely to assist in the consideration of the case" including "the elements of . . . all charged offenses."  *See* Mich. Ct. R. 2.513(A).  However, federal law simply does not require preliminary instructions of this kind, and a violation under state law is not grounds for federal habeas relief.  *See Estelle*, 502 U.S. 71-72.  Indeed, the federal courts may instruct the jury before evidence is taken, after the close of arguments, or both.  *See* Fed. R. Crim. P. 30(c).  Thus, Petitioner has not demonstrated the court's delivery of instructions to the jury after the close of arguments "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. § 2254(d)(1).

Petitioner's second alleged error with the jury instructions similarly fails.  Petitioner asserts the trial court's instructions to the jury omitted an element of the offense under which he was convicted.  (Pet'r's Br., ECF No. 2, PageID.43.)  At the time of Petitioner's trial, the Michigan Model Criminal Jury Instructions described possessing chemicals for the manufacture of methamphetamines as three elements:

> (1)      . . . To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> (2)      First, that the defendant [owned / possessed] [a chemical / laboratory equipment].
>
> (3)      Second, that the defendant knew or had reason to know that the [chemical / laboratory equipment] was going to be used to manufacture [*identify controlled substance*].
>
> . . .
>
> (8)      Third, that the controlled substance was methamphetamine.

Mich. Model Crim. Jury Instructions 12.1b (2016) (footnotes omitted).

Petitioner attempts to contrast those model jury instructions with those the trial court gave to the jury:

> [T]he Defendant is charged with the crime of owning or possessing chemicals and/or laboratory equipment for use in manufacturing methamphetamine. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt. First, that the Defendant owned or possessed a chemical or laboratory equipment. Second, that the Defendant knew or had reason to know that the chemical or laboratory equipment was going to be used to manufacture methamphetamine.

(Pet'r's Br., ECF No. 2, PageID.63.) Because the court's instructions included only two elements, Petitioner argues the third element of the model jury instructions, "that the controlled substance was methamphetamine," was necessarily omitted.

But Petitioner's argument utterly ignores the redundancy that would result from following the model jury instructions in his case. That is, where a defendant is charged with manufacturing methamphetamine, the second element ("that the defendant knew or had reason to know the [chemical / laboratory equipment] was going to be used to manufacture methamphetamine") inescapably embeds the third element ("that the controlled substance was methamphetamine"). This is not a case where a defendant was charged with manufacturing multiple controlled substances including methamphetamine. In such a case the instructions might leave ambiguity whether the jury had specifically found that the controlled substance was methamphetamine. Clearly, the court's instructions to the jury would not permit the jury to return a guilty verdict unless the jury found (1) the defendant owned or possessed a chemical, which (2) defendant knew or had reason to know the chemical was going to be used to manufacture a controlled substance, and (3) the controlled substance was methamphetamine.

In fact, shortly after Petitioner's trial, the Michigan Committee on Model Criminal Jury Instructions reduced the instructions into two elements for the offense, resulting in nearly a

13

verbatim match to instructions given during Petitioner's trial. *See* Mich. Model Crim. Jury Instructions 12.1b (2017), https://courts.michigan.gov/Courts/MichiganSupremeCourt/criminal-jury-instructions/Documents/Criminal%20Jury%20Instructions.pdf. The Michigan Legislature has not amended the section since 2003, *see* Mich. Comp. Laws § 333.7401c (2019), http://www.legislature.mi.gov/(S(20ndrkn35qlek1i0k34bshiw))/documents/mcl/pdf/mcl-333-7401c.pdf. The committee's revision to the instruction, therefore, did not respond to a change in the law but to an apparent need to improve the instructions. Presumably, the committee recognized the redundancy and revised the model instructions to read more clearly.

Unquestionably, Petitioner has not demonstrated the court's instructions to the jury were so flawed as to infect the entire trial such that his conviction violated due process. *See Cupp* at 147. The trial court's instruction certainly was not undesirable, erroneous, or universally condemned. *See Estelle*, 502 U.S. at 72. Indeed, the trial court appears to have simply recognized a clearer articulation of the statutory elements, and the state committee adopted the clearer articulation thereafter.

Thus, Petitioner has not demonstrated the court's instructions to the jury "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1).

Petitioner's final challenge to the jury instructions asserts that the instructions for the offense under which he has been convicted specifies a sentence of 10 years, not the 20 years. (*See, e.g.*, Pet., ECF No. 1, PageID.8.) As fully discussed above, the relevant model jury instructions specify that the 10-year maximum sentence can be increased if aggravating factors are proved beyond a reasonable doubt. *See* Mich. Model Crim. Jury Instructions 12.1b n.3 (2016)

("Knowingly owning or possessing the described chemicals or equipment is a 10-year offense. MCL 333.7401c(2)(a). Various aggravating factors increase the maximum term of imprisonment. *Blakely v Washington*, 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004), requires that factors that increase a maximum sentence be charged and proved beyond a reasonable doubt."). Manufacture of methamphetamine, as opposed to another controlled substance, is one such aggravating factor. *See* Mich. Comp. Laws §§ 333.7401c(2)(f), 333.7214(c)(ii) (indicating that violations intending to involve the manufacture of methamphetamine are punishable by up to 20 years); Mich. Model Crim. Jury Instructions 12.1b(8). Consequently, Petitioner's allegation that he was convicted of a 10-year offense is patently false. Thus, Petitioner has failed to show his entire trial was so infected by flawed jury instructions that his conviction violated due process. *See Cupp*, 414 U.S. at 447.

Accordingly, Petitioner is not entitled to habeas relief for any perceived errors in his jury instructions.

### B. Charge-Conviction-Sentence Mismatch (Grounds III, IX, X, XII)

Petitioner alleges that "the state does not seem to understand that [Petitioner] was convicted of a crime that [Petitioner] was not charged with . . . because the prosecution . . . omitted the third element from the jury instructions." (*E.g.*, Pet., ECF No. 1, PageID.14.) Although his petition leaves his basis unclear, to the extent Petitioner alleges a claim distinct from an error with the jury instructions, he presumably contends that he lacked notice that he was charged with an aggravating factor that had a statutory maximum prison sentence of 20 years. Despite the Petitioner's confidence in his own argument, he provides scarce detail for the assertion beyond that he was sentenced under Mich. Comp. Laws § 333.7401c(2)(f), carrying a maximum prison sentence of 20 years, but that he was charged under Mich. Comp. Laws § 333.7401c(1)(b), which

carries a maximum prison sentence of 10 years. Insofar as Petitioner implies that he lacked notice of the charges, his argument fails.

A criminal defendant must be given notice of the crimes he is charged with committing. The Sixth Circuit has made clear, "even an erroneous statutory citation in a[] [charging document] does not thereby render the ensuing conviction under the correct statute invalid absent a showing of prejudice to the defendant." *United States v. Stone*, 954 F.2d 1187, 1191 (6th Cir. 1992). If a criminal defendant is aware of the crime he is charged with committing, the "designation by the pleader of the statute under which he purported to lay the charge is immaterial." *United States v. Hutcheson*, 312 U.S. 219, 229 (1941).

Petitioner clearly admits that the jury found him guilty under Mich. Comp. Laws § 333.7401(c)(2), but he asserts that the section "carries only a 10-year maximum prison term." (Pet., ECF No. 1, PageID.16.) In fact, this is the same section under which he was convicted. As noted above, the jury found Petitioner guilty of an aggravating factor—the violation involved the intended manufacture of methamphetamine—in addition to the base offense. With the aggravating factor, the maximum sentence increased to 20 years.

Petitioner does not maintain that he was unaware that he was charged with the base offense under Mich. Comp. Laws § 333.7401c(1)(b). Furthermore, Petitioner does not allege he was unaware that methamphetamine was the controlled substance the State charged him with intending to manufacture. As recounted in the Michigan Court of Appeals opinion, Petitioner had admitted to law enforcement during the traffic stop that he knew how to make methamphetamine, that he knew that the chemicals found in his vehicle were used in the manufacture of methamphetamine, and that "he had been in trouble with methamphetamine in the past." *People v. Huey*, No. 332955, at 2. In fact, Petitioner had been convicted and sentenced under the same

section and with the methamphetamine enhancement in 2009. *See* MDOC, Offender Tracking Information System https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=726378 (last visited Nov. 22, 2019).

"If a complete miscitation in an indictment does not invalidate a defendant's conviction, it follows that the mere failure to include the language from a subsection of the correctly cited statute cannot be fatal." *Stone*, 954 F.2d at 1192. Petitioner has not alleged that he was unaware that he was charged with an aggravating factor or that methamphetamine was the controlled substance he was charged with intending to manufacture. Clearly, Petitioner had notice of the offense under which he was charged and that manufacture involving methamphetamine was an aggravating factor.

Accordingly, Petitioner is not entitled to habeas relief for lack of notice of the crime for which he was convicted.

### C.    Defective Verdict Form (Ground XVI)[2]

Petitioner further alleges that the jury was provided "a defective verdict form that erroneously combined two charges into one; the result was that the jury was not given the opportunity to return a not guilty verdict on the appropriate charge." (Pet'r's Br., ECF No. 2, PageID.44.) This allegation is utterly absurd. The verdict form clearly permitted the jury to return a verdict of not guilty:

Count 1 — Controlled Substance- Operating Maintaining Laboratory Involving Methamphetamine (Owning/Possessing chemical or laboratory equipment to manufacture methamphetamine).

☐    We, the jury, find the Defendant not guilty.

---

[2] Because Petitioner introduces this ground for relief in the first instance in his habeas petition, Petitioner has never fairly presented the "defective verdict form" issue to any of the state courts. Although the habeas statute prevents the Court from granting habeas relief on an unexhausted claim, 28 U.S.C. § 2254(b)(1), the Court may still deny relief on such a claim, 28 U.S.C. § 2254(b)(2).

☐ We, the jury, find the Defendant guilty of Operating Maintaining Laboratory Involving Methamphetamine (Owning/Possessing chemical or laboratory equipment to manufacture methamphetamine).

(Ex. Supp. Pet'r's Br., ECF No. 2-1, PageID.68.)

Petitioner presumably argues that, notwithstanding the "not guilty" checkbox, the jury could not find him guilty without also being guilty of the aggravating factor of manufacture of methamphetamine. Undoubtedly, had the jury found the State failed to meet its burden proving Petitioner intended to manufacture methamphetamine, it would have found Petitioner not guilty on Count 1.

Accordingly, Petitioner's hollow challenge to the verdict form is not entitled to habeas relief.

## D. Insufficient Evidence (Grounds I, VI)

Petitioner alleges that "there was no proof [Petitioner] owned or controlled any chemical or laboratory equipment, and no proof [Petitioner] had knowledge that items in the vehicle were or would be used to manufacture methamphetamine." (Pet., ECF No. 1, PageID.4, 11.)

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific

reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'" *Id*. at 655. The Court described a reasonable inference as an inference that a rational jury could make from the facts. Certainly, the inference identified by the court of appeals—that Petitioner owned or possessed chemicals that would be used for the manufacture of methamphetamine—could rationally flow from the underlying facts. The inference is not compelled by those facts. The inference may not even be more likely than not. It is simply rational. *Id*. at 656. To succeed in his challenge, Petitioner must show that the identified inference is irrational. Or, in the parlance of federal habeas review, he must show that the state court's determination that the inference is reasonable is contrary to, or an unreasonable application of, *Coleman*.

He has not made that showing. His bald assertion that the prosecution never proved his case—specifically that Petitioner owned or possessed chemicals and that those chemicals would be used to manufacture methamphetamine—falls flat. Moreover, Petitioner does not respond to the court of appeals determination on either factual issue.

The Michigan Court of Appeals opinion clarified that, under state law, "[p]ossession may be actual or constructive, and it may also be joint or exclusive." *People v. Huey*, No. 332955 at 3 (citing *People v. Johnson*, 293 Mich. App. 79, 83; 808 N.W.2d 815 (2011)). The court of appeals next defined constructive possession as "knowingly ha[ving] the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons" and that it could be determined "when the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband." *Id.* (quoting *People v. LaFountain*, 495 Mich. 968, 969; 844 N.W.2d 5 (2014); *People v. Meshell*, 265 Mich. App. 616, 622; 696 N.W.2d 754 (2005)). Finally, the issue of "[p]ossession is a question of fact, and it can be proven by circumstantial evidence and reasonable inferences." *Id.* (citing *People v. Strickland*, 293 Mich. App. 393, 400; 810 N.W.2d 660 (2011)).

Using these parameters, the court of appeals determined "that a rational jury could have concluded beyond a reasonable doubt that [Petitioner] constructively possessed the pseudoephedrine and drain cleaner" based on his dominion and control over the items. *Id.* The court of appeals specifically noted that "Nelson's testimony indicated that [Petitioner] exercised dominion or control over the pseudoephedrine and the drain cleaner by having her purchase the chemicals for him and to be used by him." *Id.* The court also pointed to Petitioner's proximity to the chemicals during the traffic stop and that Nelson followed Petitioner's instruction to place the

drain cleaner in her purse. The court of appeals determined that the evidence was, therefore, sufficient to permit the jury to infer Petitioner exercised possession over the chemicals.

Likewise, the court of appeals articulated that under Michigan state law, "minimal circumstantial evidence will suffice to establish defendant's state of mind." *Id.* (citing *People v. Kanaan*, 278 Mich. App. 594, 622; 751 N.W.2d 57 (2008)). The court of appeals noted that Nelson testified that she had discussed with Petitioner going to the store that day to acquire chemicals for the manufacture of methamphetamine; that whenever she purchased chemicals, the chemicals "always" went to the Petitioner with the expectation that the they would be used for the manufacture of methamphetamine; and that her relationship with Petitioner almost exclusively related to methamphetamine manufacture and use. *Id.* Thus, viewing the evidence in the light most favorable to the prosecution, the court of appeals held that that a rational jury could have inferred that Petitioner planned to use the chemicals to manufacture methamphetamine. *Id.*

Petitioner has not alleged that any of the evidence the state courts relied on was not part of the record or otherwise unknown to the trier of fact. Nor has Petitioner identified any United States Supreme Court case that resolves the issue differently on a set of materially indistinguishable facts. Accordingly, Petitioner is not entitled to habeas relief for insufficient evidence.

### E. Unreasonable and Disproportionate Sentence (Grounds XIII, XIV)[3]

Petitioner also alleges that he "is entitled to resentencing because his minimum term was an unreasonable and disproportionate sentence." (Pet., ECF No. 1, PageID.20.) Petitioner

---

[3] Petitioner has failed to fully exhaust this issue. Here, Petitioner has never fairly presented the "unreasonable and disproportionate sentence" issue to the state trial court in his motion for relief from judgment under Mich. Ct. R. 6.500. Although the habeas statute prevents the Court from granting habeas relief on an unexhausted claim, 28 U.S.C. § 2254(b)(1), the Court may still deny relief on such a claim, 28 U.S.C. § 2254(b)(2).

does not clearly articulate facts supporting this ground beyond his contention that the alleged improper jury instructions has resulted in Petitioner being sentenced for the wrong offense. (*Id.*)

To the extent that Petitioner claims that his sentence was disproportionate under the analysis enunciated by the Michigan Supreme Court in *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990), his claim is not cognizable on habeas review. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

To the extent Petitioner asserts that his sentence was disproportionate under the Eighth Amendment, his argument is without merit. The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213

F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Further, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law. Petitioner's sentence therefore does not present the extraordinary case that runs afoul of the Eighth Amendment's ban on cruel and unusual punishment.

Petitioner also fails to demonstrate a due process violation. A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980), *quoted in Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. 2005); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

As explained above, Petitioner's assertion that his sentence relates to the wrong offense fails to pass muster. Neither does Petitioner identify any facts found by the court at sentencing that were either materially false or based on false information. He therefore fails to demonstrate that his sentence violated due process. *Tucker*, 404 U.S. at 447; *United States v.*

*Lanning*, 633 F.3d 469, 477 (6th Cir. 2011) (rejecting due process claim where the petitioner failed to point to specific inaccurate information relied upon by the court)

For these reasons, the state-court's rejection of Petitioner's claims was not based on an unreasonable determination of the facts and was neither contrary to nor an unreasonable application of established Supreme Court precedent. 28 U.S.C. § 2254(d). Accordingly, Petitioner is not entitled to habeas relief for an unreasonable or disproportionate sentence.

### F. Ineffective Assistance of Trial Counsel (Grounds V, VII, XI, XVII)

Petitioner alleges that his "trial attorney did not take the time to research [his] case and understand what charges were lodged against [him]." (Pet., ECF No. 1, PageID.12.) Petitioner further alleges that his trial counsel was not familiar with the elements of the offense Petitioner was convicted of. Petitioner argues that the errors he alleges with the jury instructions and verdict form were not effectively challenged because he lacked effective assistance of counsel. (Pet'r's Br., ECF No. 2, PageID.47-49.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The Supreme Court "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Instead, the defendant bears the burden of overcoming the presumption that the

challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Petitioner's argument fails on both *Strickland* prongs. First, Petitioner has failed to identify any aspect of counsel's performance that fell below an objective standard of reasonableness. He alleges that his trial counsel permitted (1) Petitioner to be sentenced to a crime he was not charged with committing; (2) erroneous jury instructions; and (3) a verdict form that combined two charges into one. (Pet'r's Br., ECF No. 2, PageID.47.)

Subpart C of this opinion makes clear why trial counsel lacked meritorious grounds on which to challenge the sentence. With the jury instructions, Petitioner has not pointed to a flaw or to an improvement that trial counsel should have pursued. With the verdict form, Petitioner implies his attorney should have objected to include the lesser charge without the aggravating factor. However, it remains unclear what controlled substance, other than methamphetamine, the jury could have convicted Petitioner of intending to manufacture. Consequently, had Petitioner's trial counsel objected to the jury instructions or verdict form he may have done little more than to annoy the judge. *See Robinson v. United States*, 625 F. App'x 721, 724-25 (6th Cir. 2015). Trial counsel should "'use objections in a tactical manner'" so as to avoid "quickly annoying judges and juries." *Id.* (quoting *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006)). With these

consequences in mind, trial counsel's decisions not to object to the sentence, jury instructions, and verdict form were not objectively unreasonable. *See Robinson*, 625 F. App'x at 725 (citing *Strickland*, 466 U.S. at 687).

Likewise, Petitioner fails to satisfy *Strickland*'s prejudice prong. Petitioner must show not just his trial counsel's deficient performance, but that, "if his attorney had objected, the jury would have acquitted him." *Robinson*, 625 F. App'x at 725 (6th Cir. 2015). Petitioner cannot demonstrate that he was the least bit prejudiced by the trial court's instructions to the jury, the verdict form provided to the jury, or by counsel not objecting to the Petitioner's charge at sentencing.

Thus, the court of appeals' rejection of Petitioner's ineffective assistance of counsel claim is neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief for an ineffective trial counsel.

### G. Ineffective Assistance of Appellate Counsel (Grounds XI, XVIII)

Petitioner alleges his appellate counsel provided ineffective assistance because counsel neglected to raise the "Dead Bang Winner[]" issues Petitioner raises in his habeas petition. (*See e.g.*, Pet'r's Br., ECF No. 2, PageID.49-51.)

In the context of an attorney's alleged failure to file an appeal, the Supreme Court has indicated that the *Strickland* standard continues to apply. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). In reviewing such a claim, "'[j]udicial scrutiny of counsel's performance must be highly deferential.'" *Id.* at 477 (quoting *Strickland*, 466 U.S. at 689). As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not

presented "was clearly stronger than issues that counsel did present." *Id.* Where a claim lacks merit, appellate counsel is not ineffective in declining to raise the issue on direct appeal. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."); *Burton v. Renico*, 391 F.3d 764, 781-82 (6th Cir. 2004) (where claim of prosecutorial misconduct lacks merit, counsel is not ineffective in declining to raise issue on appeal).

On direct appeal, Petitioner's appellate counsel raised two grounds for relief. Appellate counsel argued both that the trial court erred with the jury instructions and that insufficient evidence existed to prove Petitioner possessed chemicals and that those chemicals were intended for the manufacture of methamphetamine. (Pet'r's Br., ECF No. 2, PageID.33-34.) Petitioner has neglected to identify any strong arguments that appellate counsel failed to make.

Indeed, many of Petitioner's alleged grounds for habeas relief constitute "a restatement of the same issue." (Pet., ECF No. 1, PageID.14.) Indeed, Petitioner effectively admits as much, stating "Although [the] issue[s] appear to be the same . . . it is again [Petitioner's] way of attempting to clarify the problem with the jury instructions." (*Id.*, PageID.8.) At least 13 of Petitioner's 20 alleged grounds for habeas relief (Grounds I-IV, VI, VIII-X, XII-XVI) grow out of the two grounds appellate counsel raised. Petitioner's remaining seven grounds are predicated on the Court finding merit with at least one of the thirteen grounds growing out of appellate counsel's arguments. Clearly, Petitioner has failed to show that his appellate counsel performance was deficient. On the contrary, Petitioner merely attempts to revive appellate counsel's arguments in new form.

Thus, Petitioner cannot show either that his appellate counsel performed deficiently or that he was in any way prejudiced. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of appellate counsel.

### H. Denial of Fundamental Protections through Cumulative Effect of Error (Ground XX)[4]

Petitioner alleges that he was denied the "fundamental protections to a fair criminal proceeding . . . through the cumulative effect of error that took place at the hands of the trial court, the prosecution, defense counsel[,] and appellate counsel." (Pet'r's Br., ECF No. 2, PageID.54.)

Under the AEDPA, a court only may grant habeas relief based on a misapplication of Supreme Court law. *Bailey*, 271 F.3d at 655. The Sixth Circuit repeatedly has stated that cumulative error claims are not cognizable on habeas review. "The Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief." *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002); *see also Keith v. Mitchell*, 455 F.3d 662, 679 (6th Cir. 2006); *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006); *Baze v. Parker*, 371 F.3d 310, 330 (6th Cir. 2004); *Millender v. Adams,* 376 F.3d 520, 529 (6th Cir. 2004); *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002).

Moreover, because the Court concluded above that the individual claims are without merit, Petitioner cannot show that the cumulative error violated his constitutional rights. *See Seymour*, 224 F.3d at 557.

---

[4] Because Petitioner introduces this ground for relief in the first instance in his habeas petition, Petitioner has never fairly presented the "cumulative effect of error" issue to any of the state courts. Although the habeas statute prevents the Court from granting habeas relief on an unexhausted claim, 28 U.S.C. § 2254(b)(1), the Court may still deny relief on such a claim, 28 U.S.C. § 2254(b)(2).

# I.     "Good Cause" for Procedural Defects (Grounds XII, XIX)

Finally, Petitioner contends that his procedural default should be excused because he can establish good cause for failing to comply with state procedures, and prejudice would result should the Court not excuse the procedural default.  (Pet'r's Br., ECF No. 2, PageID.51.)

"If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review."  *Magwood v. Patterson*, 561 U.S. 320, 340 (2010).  Nevertheless, the U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.  *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)).  *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default.  *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

Accordingly, the Court will assume without deciding that there was no procedural default for each alleged ground or that Petitioner could show cause and prejudice for that default while deciding each ground against Petitioner on the merits. *See Hudson*, 351 F.3d at 215-16.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.  Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**<u>Conclusion</u>**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:  December 17, 2019                              /s/  Paul L. Maloney
                                                        Paul L. Maloney
                                                        United States District Judge